# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3527

_____

Stacy Altonen,                                    *
                                                  *
          Plaintiff - Appellant,       *
                                                  *
                                                  *  Appeal from the United States
        v.                          *  District Court for the
                                                  *  District of Minnesota.
City of Minneapolis; William                      *
McManus, individually, and in his                 *
capacity as Chief of Police for the City          *
of Minneapolis,                                   *
                                                  *
         Defendants - Appellees.      *

_____

Submitted: March 14, 2007
Filed: June 4, 2007

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Stacy Altonen, a lieutenant in the Minneapolis Police Department, sued the City of Minneapolis and Chief of Police William McManus under 42 U.S.C. § 1983, alleging retaliation in violation of the First Amendment for her support of a competing

candidate for chief.  The district court[1] granted defendants' motion for summary judgment, and Altonen appeals.  We affirm.

Altonen was hired by the Minneapolis Police Department in September 1987 and received several promotions.  On February 9, 2003, then Chief of Police Robert Olson appointed Altonen to inspector.  She was notified at the time of her appointment that inspectors serve at the pleasure of the chief, that she could be removed at any time without cause, and that if she were no longer needed as inspector, she would be reinstated to her former rank as a captain.  In October 2003 the city began searching for a new chief.  Altonen applied for the position but was eliminated after the second round of interviews. She then backed Deputy Chief Lucy Gerold for chief and telephoned two city council members to express her support.  William McManus was ultimately appointed to the position, and he was sworn in on February 17, 2004.

In January 2003, two weeks before her appointment to inspector, Altonen had been placed in charge of an investigation into the shooting of officer Duy Ngo. Although Duy Ngo claimed he had been shot by an unidentified assailant, there was evidence which caused some to suggest that he had shot himself.  After Altonen was given responsibility for the investigation, she began to believe that department officers had mishandled the investigation and told Chief Olson about her suspicions.  After McManus became chief, he publicly suspended several officers involved in the Duy Ngo investigation.  At a press conference announcing the suspensions McManus stated that an allegation with "criminal overtones" had been made claiming several officers had destroyed a memorandum related to the case.  Gerold and one of her supporters were among those suspended. The allegation was later found to be without merit, and the officers were reinstated.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

In December 2003 Altonen became the subject of a human resources investigation based on the complaint of Lieutenant Robert Skomra. Skomra had alleged that Altonen had violated the city's Respect in the Workplace Policy by having him transferred out of the homicide division so that he could be replaced by an officer with whom he thought she had a personal relationship. At the end of February 2004 Altonen contacted lead investigator Jessica Jackson about the status of the inquiry into Skomra's complaint. Jackson informed her that the investigation had been closed and that the allegations were not sustained. Altonen requested a copy of the Skomra investigative file. When her request was denied, she filed a lawsuit under the Minnesota Government Data Practices Act to gain access to it.

Department protocol provides that when an employee is accused of violating the Respect in the Workplace Policy, an investigator is assigned to gather evidence and prepare a memorandum of findings and recommendations for a "need to know" committee. An investigation cannot be closed until that committee meets to review the findings and recommendations and to consider whether additional information is needed. Altonen's need to know committee included Chief McManus; it met for the first time on March 11, 2004. Jackson had expressed doubt that additional interviews were necessary, but McManus disagreed even though he had received a memorandum from Skomra on March 5 rescinding his claim and stating that he now believed Altonen had not been involved in his transfer. The committee agreed to continue the investigation but closed it after the additional interviews because the evidence did not support the allegations.

Altonen received the investigative file in May 2004 and discovered that one reason Chief McManus had extended the investigation was because he suspected Skomra's complaint against Altonen and the Duy Ngo investigation were part of the same "big picture." Altonen argues that this comment revealed McManus's animus toward those who had supported Gerold because it connected her to the officers who had been temporarily suspended for allegedly destroying a key document and who had

also opposed McManus's appointment as chief. Jackson's notes in the Skomra file also suggested that McManus thought Altonen and Gerold were conspiring to bring a sexual harassment lawsuit.

In May 2004 the department's director of administrative services resigned, and management determined it was necessary to downsize. The decision to downsize required shifting assignments throughout the department. Deputy Chief Sharon Lubinski had expressed concern to McManus about Altonen's ability to communicate and work as a team member. Lubinski believed Altonen had mismanaged the spending on a Neighborhood Revitalization grant and discovered that she had allowed a photograph critical of McManus to be posted publicly in a station in her precinct. Deputy Chief Timothy Dolan also observed that Altonen had communication problems with Lubinski and animosity toward McManus.

Dolan knew that the administrative services division had an opening that was appropriate for a captain, and he suggested reassigning Altonen to save the department from hiring an additional officer. Both he and Lubinski suggested removing Altonen from her inspector position, and McManus reassigned her to captain of the administrative services division on May 16, 2004. The reassignment decreased her salary by $12,000, and she lost access to the car she had been allowed to keep at her residence. Altonen's responsibility for professional development was assigned to someone else, and she had much less responsibility in her new position and fewer reports than other officers of her rank. Although she had been scheduled to attend a senior management training session, her spot was taken by an officer who had not supported Gerold for chief.

Altonen sued Chief McManus and the City of Minneapolis in state court, alleging violations of her First Amendment rights under 42 U.S.C. § 1983. She claimed that her reassignment, the extended investigation into Lieutenant Skomra's complaint, and the lost opportunity to attend the management training session were

adverse employment actions taken against her in retaliation for supporting Lucy Gerold for chief and for filing the lawsuit to gain access to the file from the Skomra complaint. As evidence that she had been reassigned because of her speech, she offered a transcript of an interview of Lieutenant Mike Martin by the Bureau of Criminal Apprehension. He reported that he had heard Chief McManus repeatedly comment that he intended to "take out" Gerold and her supporters. Altonen also brought a claim under the Minnesota whistleblower statute, Minn. Stat. § 181.932, alleging retaliation in response to her lawsuit. Defendants removed the case to federal district court and moved for summary judgment based on qualified immunity.

The district court concluded that Altonen's lawsuit to gain access to the Skomra investigative file was not protected speech because it was not related to a matter of public concern, but that her support of Gerold for chief was protected. It determined that her reassignment was an adverse employment action but that she had not shown a causal connection between her support for Gerold and her reassignment. The court also concluded that appellees had shown that Altonen would have been reassigned regardless of her support for Gerold. Finally, the district court declined to exercise supplemental jurisdiction over her whistleblower claim and dismissed it without prejudice.

Altonen appeals from the grant of summary judgment, arguing that the district court made several erroneous legal and factual determinations. We review the appeal of a grant of summary judgment de novo, with the evidence taken in the light most favorable to the nonmoving party. Senty-Haugen v. Goodno, 462 F.3d 876, 885 (8th Cir. 2006). Summary judgment is appropriate if the evidence viewed in this manner demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Johnson v. Blaukat, 453 F.3d 1108, 1112 (8th Cir. 2006).

To establish her First Amendment retaliation claim, Altonen must prove that she engaged in protected activity and that this activity was a substantial or material factor in her employer's decision to take an adverse employment action. See Hughes v. Stottlemyre, 454 F.3d 791, 796 (8th Cir. 2006). If this showing is made, the burden shifts to the employer to demonstrate that it would have taken the same action regardless of her First Amendment activities. Id. Although Altonen's activities might have involved both affiliation and speech rights, she rests her claim on violations of her right to free speech. See O'Hare Truck Service, Inc. v. City of Northlake, 518 U.S. 712, 720 (1996). Speech is protected if it relates to a matter of public concern; if this is shown, the court must then determine whether Altonen's First Amendment interest outweighs any injury to the department's efficient operations. See Kincade v. City of Blue Springs, 64 F.3d 389, 395 (8th Cir. 1995); Pickering v. Bd. of Educ., 391 U.S. 563, 574 (1968). Altonen bears the burden of demonstrating that her speech is protected. See Calvit v. Minneapolis Pub. Sch., 122 F.2d 1112, 1116 (8th Cir. 1997).

Altonen first argues that the district court erred by concluding that her lawsuit was not protected speech. The court concluded that her interest in filing the lawsuit was to obtain confidential information about an allegation against her and that this was a personal interest not related to a matter of public concern. Altonen argues that her lawsuit was intended to inform the public about inconsistencies in the Duy Ngo case and that the trial court made a factual determination about her motive when it should have been presented to a jury. Whether expressive activity is protected by the First Amendment is a legal question. Schilcher v. Univ. of Arkansas, 387 F.3d 959, 963 (8th Cir. 2004). We conclude that the district court did not err by undertaking this analysis on the summary judgment motion.

When speech relates both to an employee's private interests as well as matters of public concern, the speech is protected if it is primarily motivated by public concern. Bailey v. Dep't of Elem. & Secondary Educ., 451 F.3d 514, 518 (8th Cir.

2006).    If the main motivation for the speech was furthering Altonen's "private interests rather than to raise issues of public concern, her speech is not protected, even if the public would have an interest in the topic of her speech." See id.  The motivation for her speech is determined by evaluating the speech's content, form, and context.  Kincade, 64 F.3d at 396.  The context and content of Altonen's lawsuit suggest that her primary motivation was her personal interest in obtaining access to her files, not to provide the public with information.  Altonen now contends that her motive was to inform the public about the mishandling of the Duy Ngo investigation, but the record does not show that and Altonen only learned that McManus believed the Duy Ngo investigation and Skomra's complaint were part of the same "big picture" months after she initiated her  lawsuit.  Moreover, she did not attempt to gather other information even though the Duy Ngo case was extensive and included numerous documents.

The issue related to the Skomra complaint file makes this case similar to Adair v. Charter Cty. of Wayne, 452 F.3d 482 (6th Cir. 2006).  In Adair, the plaintiff's Fair Labor Standards Act lawsuit was not protected speech because it  related only to personal employee overtime pay.  Id. at 492.  Altonen has not identified any place in the record that shows she filed the suit as a concerned citizen attempting to inform the public about her government employer's practices.  We conclude that the district court did not err in concluding that Altonen's lawsuit was not a matter of public concern.

The district court determined that Altonen's support of Gerold was protected speech, and appellees do not contest this point. The question therefore is whether Altonen suffered any adverse employment action as a result of her support of Gerold. Altonen argues that the district court erred in concluding that the need to know committee's decision to continue the internal investigation after March 11 was not an adverse employment action. The district court reasoned that the investigation resulted in no discernible change to her employment.

Altonen has the burden of proving that the alleged employment action adversely and materially altered the terms or conditions of her employment. See Bechtel v. City of Belton, 250 F.3d 1157, 1162 (8th Cir. 2001). Although actions short of termination can at times be considered adverse employment decisions, "[n]ot everything that makes an employee unhappy is an actionable adverse decision." Id. (citation omitted).

There is no evidence in the record that Altonen's position changed in any way due to the Skomra investigation or the additional interviews conducted after the March 11 need to know meeting. Internal investigations into employee complaints are not adverse employment actions when they do not result in any change in form or condition to the employee's employment. Jones v. Fitzgerald, 285 F.3d 705, 715 (8th Cir. 2002). Here, the investigation determined that Skomra's complaint against Altonen was without merit. Altonen has not shown that management took disciplinary action against her for any reason related to the investigation. We conclude that the district court did not err in concluding that the need to know committee's decision to hold additional interviews after its March 11 meeting was not an adverse employment action.

The district court determined that Altonen's reassignment was an adverse employment action, and this is not contested on appeal. To avoid summary judgment, Altonen had to demonstrate that her support of Gerold was a substantial, motivating factor that caused her reassignment and that McManus had a retaliatory motive that "played a part in the adverse employment decision." See Hughes, 454 F.3d at 797. Evidence that gives rise to an "inference of retaliatory motive" is sufficient to prove a causal link between the speech and the adverse action. See Kipp v. Missouri Highway and Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002). If that showing is made, the burden shifts to the defendant to demonstrate the employer would have taken the same action regardless of the protected conduct. Id.

The district court determined that Altonen failed to meet her burden because the evidence she presented did not support an inference that she was reassigned because of a retaliatory motive. Altonen argues that the suspensions of Gerold and her supporters and the comments of McManus concerning his political opponents establish the required causal link. The comments of the chief recounted in Lieutenant Martin's interview all referred to named individuals; there is no evidence from Martin that any animus was directed at Altonen. Altonen continued in her position as inspector for three months after McManus was sworn in. See id. (two month delay between protected activity and adverse employment action dilutes an inference of causation). Although Altonen presented evidence that McManus suspected Skomra's complaint and the Duy Ngo investigation were part of a larger conspiracy connecting Altonen to the suspended officers, she points to no evidence in the record that his conjecture about the "big picture" contributed to her reassignment.

Appellees presented evidence that weighs against inferring a retaliatory motive and they point to evidence in the record that suggests Altonen's reassignment was based on nonretaliatory reasons. See Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir. 1992) (defendants' submission of legitimate, nondiscriminatory reasons for adverse employment decision weakens inference of causation). They showed that her reassignment followed the resignation of the administrative services director which caused a shift in positions throughout the department, that the department had made a commitment to reduce spending and Altonen's reassignment contributed to that goal, and that the two chief deputies questioned the quality of Altonen's contribution to the management team. Also relevant is that Altonen was notified at the time she was promoted to inspector that it was an at will position and that she could be returned to her captain position at any time without cause. Altonen had the burden to demonstrate a causal connection between her protected speech and the adverse employment action of reassignment as part of establishing her prima facie case. See Hughes, 454 F.3d at 796-97. We conclude that she did not present sufficient

evidence to create an inference of retaliatory motive and failed to establish a prima facie case.[2]

Accordingly, we affirm the judgment of the district court.

————————————

<hr/>

[2]Because of this conclusion, we need not determine whether appellees demonstrated that Altonen would have been transferred quite apart from her support of Gerold.