# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1353

_____

Al McCullough,                              *
                                            *
            Appellant,                      *
                                            *   Appeal from the United States
    v.                                      *   District Court for the
                                            *   Eastern District of Arkansas.
University of Arkansas for Medical          *
Sciences; Jim Raczynski, individually       *
and in his official capacity as Dean        *
of the College of Public Health; Hosea      *
Long, Assistant Vice Chancellor for         *
Human Resources, in his individual and      *
official capacities,                        *
                                            *
            Appellees.                       *

_____

Submitted: September 22, 2008
Filed: March 23, 2009

_____

Before BYE, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Al McCullough brought claims pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.,* and the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101 *et seq.*, alleging that his employer, the University of Arkansas for Medical Sciences (UAMS), and individuals Jim Raczynski and Hosea Long,

discriminated against him on the basis of sex and retaliated against him for participation in a protected activity. He also brought claims alleging retaliation for the exercise of his free speech rights under the First Amendment and the Arkansas Constitution, Ark. Const. art. II, § 6, pursuant to 42 U.S.C. § 1983 and Ark. Code. Ann. § 16-123-105, respectively. The district court[1] granted summary judgment in favor of the defendants on all claims. *McCullough v. Univ. of Ark. for Med. Scis.*, No. 4:06-CV-0390, 2008 WL 150200 (E.D. Ark. Jan. 14, 2008). We affirm.

I.

Because we are reviewing a grant of summary judgment, we describe the facts in the light most favorable to McCullough. McCullough worked as a Computer Project Program Director for UAMS in the College of Public Health (COPH). During McCullough's employment, James Raczynski served as Dean of the COPH, and Hosea Long served as Vice Chancellor for Human Services.

On June 28, 2005, Elaine Wooten, a female employee at the COPH, submitted a formal complaint to Long stating that McCullough had sexually harassed her. On July 7, 2005, another female employee at the COPH, Jodiane Tritt, filed a sexual harassment complaint against McCullough. Pursuant to UAMS's sexual harassment policy, Long appointed Judy Sims and Ken Easter, two members of a group called the Resource Panel, to investigate the complaints. According to UAMS policy, the Resource Panel is a panel composed of individuals nominated by the heads of each UAMS division, who are "trained in issues relating to sexual harassment, as well as in the proper manner of investigating complaints." In the case of a formal complaint such as Wooten's or Tritt's, two members from the independent Resource Panel are appointed to investigate the allegations of the complaint.

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

On July 12, Raczynski, Long, and Audrey Bradley, an employee relations manager, notified McCullough that two complaints had been filed against him, and that two resource investigators had been assigned to investigate them. McCullough responded by sending an e-mail message to Long, with copies to his supervisor, Raczynski, and Andrea Roy, a Human Resources Officer. He attached a sexual harassment complaint against Elaine Wooten – the same employee who had accused him of sexual harassment. On July 28, McCullough met with resource investigators Easter and Sims to discuss the allegations against him. At that meeting, Easter and Sims asked him to submit a written response. About a week later, McCullough submitted a copy of the same complaint against Wooten that he had sent to Long, as well as a new sexual harassment complaint against Tritt – the other employee who had accused him of sexual harassment. He addressed his complaint against Tritt to Long, Raczynski, Roy, and Bradley.

During the next few weeks, investigators Sims and Easter interviewed McCullough, Wooten, Tritt, and eight other people listed in McCullough's complaints as potential witnesses. McCullough's interview lasted roughly two hours, and the investigators noted that McCullough spent the majority of the time attacking the character of Wooten and Tritt, rather then responding directly to the allegations against him. After completing their investigation, Easter and Sims submitted their findings to Long. They found "the claims against Mr. McCullough more believable than his response in defense of those claims," and added that "if all the witnesses interviewed were telling the truth, and there was no reason not to believe them, Mr. McCullough was untruthful and used his response to cloud the real issues of the investigation."

After reviewing the findings, Long asked the investigators for more information. The investigators submitted an addendum with specific notes from all of the witness interviews they had conducted. On September 21, 2005, after reviewing the investigators' report and addendum, Long submitted his

recommendation to Raczynski, who as Dean of the COPH had final decision-making authority on the matter. Long stated that "[t]here is a preponderance of evidence to indicate that Mr. McCullough has in fact exhibited inappropriate behavior of a sexual nature toward his co-workers." He added that McCullough's conduct "occurred on more than one occasion, making [it] serious to the point of warranting disciplinary actions." Finally, Long recommended that McCullough receive a warning for inappropriate sexual behavior with immediate termination upon any further offenses, and that he attend both a sexual harassment workshop and counseling on co-worker interactions.

After reviewing Long's recommendation, Raczynski asked to review all three complaints before making a decision. He also spoke with Long in person and over the phone to discuss the matter. On October 2, 2005, Raczynski terminated McCullough's employment, effective immediately. In his termination letter, Raczynski began by repeating Long's statement that there was a "preponderance of evidence to indicate that [McCullough] exhibited inappropriate behavior of a sexual nature toward [his] co-workers," and that he did so "on multiple occasions, making these incidents serious." He also stated, based on the investigators' report, that McCullough had spent most of his interview attacking Wooten and Tritt rather than responding to their allegations; that no evidence was found indicating that Wooten or Tritt had lied about him; and that, by contrast, "there was evidence to believe that [he] had been untruthful to the investigators in [his] responses . . . about the two complainants." Raczynski further stated that "[t]he believed untruthfulness of [McCullough's] responses and the claims [he] made about the two complainants have the appearance of being vindictive in nature and in response to the claims of sexual harassment by the two women." In his conclusion, Raczynski noted that "[f]or the reasons stated above," he had no option but to terminate McCullough's employment.

McCullough filed a grievance with the Office of Employee Relations. Charles White, Assistant Vice Chancellor for Employee Relations, concluded that

McCullough's termination was proper and in accordance with UAMS policy. On February 13, 2006, McCullough filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming that he was sexually harassed by a single co-worker, fired on the basis of sex, and retaliated against for filing sexual harassment complaints of his own. On March 29, 2006, McCullough filed a complaint in the district court, asserting violations of his right to free speech under the First Amendment and the Arkansas Constitution, the prohibitions on sex discrimination and retaliation in the Arkansas Civil Rights Act ("ACRA"), and the Family and Medical Leave Act. On June 6, 2006, the EEOC concluded that his claim of sex discrimination was untimely, and that the evidence showed that he was "not discharged because of his sex, or in retaliation for complaining about sexual harassment," but rather fired for sexually harassing his co-workers.

After receiving a right to sue letter from the EEOC, McCullough filed an amended complaint, in which he added retaliation and sex discrimination claims under Title VII. Specifically, he claimed that he was terminated for filing sexual harassment complaints, and that he was treated differently from the two women, Tritt and Wooten, because he was fired and they were not. McCullough abandoned the FMLA claim, and the district court granted summary judgment in favor of the defendants on all remaining claims.[2]

---

[2]McCullough sued Raczynski and Long in their individual and official capacities, but individual employees cannot be personally liable under Title VII. *See Bonomolo-Hagen v. Clay Cent.-Everly Cmty. Sch. Dist.*, 121 F.3d 446, 447 (8th Cir. 1997) (per curiam). McCullough also sued UAMS, but UAMS lacks the capacity to sue or be sued, because it is a campus of the University of Arkansas and not a separate institution or corporate body. *See Assad-Faltas v. Univ. of Ark. for Med. Scis.*, 708 F. Supp. 1026, 1029 (E.D. Ark. 1989), *aff'd*, 902 F.2d 1572 (8th Cir. 1990). Defendants made these points in their motion for summary judgment, arguing that McCullough's Title VII claims against Raczynski and Long should be dismissed, and that UAMS was not a proper party to the suit. In response, McCullough asked the court for leave to amend his complaint to name the proper parties, which defendants

II.

We consider first the district court's grant of summary judgment on the Title VII and ACRA claims, which are governed by the same standards. *See Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007). We review the grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to McCullough, the nonmoving party. *Id.* Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A.

Title VII and the ACRA prohibit employers from discriminating based on sex with respect to compensation, terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a)(1); Ark. Code. Ann. § 16-123-107. In this circuit, under both statutes, an employee may survive an employer's motion for summary judgment in one of two ways. *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007). The employee may produce direct evidence of discrimination, which is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate

_____

acknowledged would be the University of Arkansas or its Board of Trustees. In its order granting summary judgment, the court declined to allow leave to amend. It reasoned that an amendment would be futile, because McCullough could not survive summary judgment even if he named the proper defendants. *McCullough*, 2008 WL 150200, at *7. In effect, therefore, McCullough appeals the district court's denial of leave to amend as well as its grant of summary judgment on the merits. Because the district court reached the merits of McCullough's claims, while assuming for purposes of analysis that McCullough could name a proper defendant for each of his claims, we proceed in the same fashion.

criterion actually motivated the adverse employment action." *Russell v. City of Kansas City, Mo.*, 414 F.3d 863, 866 (8th Cir. 2005). If the employee lacks direct evidence of discrimination, he can survive summary judgment by showing a genuine dispute for trial under the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-05 (1973). Under *McDonnell Douglas*, the plaintiff first must establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for discharging the employee. If the employer meets this burden, then the employee must show that the employer's proffered reason for firing him is a pretext for unlawful discrimination. At the summary judgment stage, under the 1991 amendments to Title VII, the issue is "'whether the plaintiff has sufficient evidence that unlawful discrimination was *a* motivating factor in the defendant's adverse employment action.'" *Roberts v. Park Nicollet Health Servs.*, 528 F.3d 1123, 1127 (8th Cir. 2008) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 735 (8th Cir. 2004)). If so, then "'the presence of additional legitimate motives will not entitle the defendant to summary judgment.'" *Id.*

McCullough purports to have direct proof that he was discriminated against on the basis of sex, but none of it constitutes direct evidence. He claims that because his allegations were corroborated, while those made by Wooten and Tritt largely were not, and because the final decisionmaker, Raczynski, could not identify during his deposition what evidence supported McCullough's termination, "[t]he evidence of disparate treatment is so strong . . . as to constitute direct evidence."

Disagreement with a decisionmaker's conclusion on the credibility of an employee's story, however, does not constitute direct evidence of unlawful discrimination. Neither does a decisionmaker's alleged inability to pinpoint during a deposition why he decided to discharge an employee. Direct evidence provides a strong causal link between the alleged discriminatory bias and the adverse

employment decision. *McGinnis*, 496 F.3d at 873; *Griffith*, 387 F.3d at 736. It most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias. *See Duckworth v. St. Louis Metro. Police Dep't*, 491 F.3d 401, 406 (8th Cir. 2007); *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir. 1991).

None of McCullough's proof establishes a direct link between his discharge and any bias against him because he is a man. The case on which he principally relies, *Russell*, 414 F.3d 863, does not support the claim. In that case, a white female employee was demoted after an investigation determined that she made racial and sexually-oriented slurs and jokes against other employees. During her appeal to the personnel board, the alleged victims of her remarks testified either that they never heard her make such comments, or that even if they had, they were never offended because she was always non-malicious, and banter of that sort was commonplace. One alleged victim even "opined that [the white female employee] had been singled out for discipline" on account of her race. *Id.* at 866. In determining whether such evidence constituted direct evidence, this court suggested that "when two co-workers who are the alleged victims of misconduct deny that misconduct occurred and assert that the plaintiff is herself the victim of discrimination by the employer, that may well be direct evidence of discrimination." *Id.* at 867. Nothing in this record, however, indicates that Wooten or Tritt ever denied being sexually harassed by McCullough or ever stated that they were not offended by his actions. Wooten and Tritt never retreated from their complaints or suggested that they were not injured by McCullough's behavior. Accordingly, McCullough's reliance on *Russell* is misplaced.

Because McCullough does not present direct evidence of sex discrimination, we analyze his claim under the burden-shifting framework of *McDonnell Douglas*. Because the record was fully developed in connection with the motion for summary judgment, we address directly whether McCullough has presented a genuine issue for trial on the ultimate question of sex discrimination *vel non*. *See Riser v. Target Corp.*,

458 F.3d 817, 821 (8th Cir. 2006); *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005).

The critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge. *Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004); *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000). A plaintiff seeking to survive an employer's motion for summary judgment must therefore show a genuine issue for trial about whether the employer acted based on an intent to discriminate rather than on a good-faith belief that the employee committed misconduct justifying termination. *Johnson*, 424 F.3d at 811. McCullough has failed to do so here. The employer's legitimate, nondiscriminatory reason for termination in this case was that McCullough engaged in sexual harassment and then filed untruthful complaints against the female complainants. McCullough has not presented sufficient evidence to create an issue for trial on the question whether the final decisionmaker, Raczynski, and the principal recommender, Long, genuinely believed that he had engaged in such conduct.

McCullough responds that summary judgment was inappropriate because the evidence would support a finding that the employer's explanation for his termination was a pretext for unlawful discrimination. McCullough cites (1) the employer's "irrational" decision to believe the female complainants over him, (2) alleged inconsistencies in the reasons given for his termination, (3) a failure to follow UAMS policy by not interviewing all of the witnesses listed in his complaints, (4) the inability of Long and Raczynski to specify what facts supported his termination, and (5) improper speaking objections during depositions, which allegedly amounted to spoliation of evidence. We conclude that McCullough's evidence does not raise a reasonable inference that unlawful sex discrimination motivated his termination.

McCullough argues that because "the only objective evidence regarding the interactions between McCullough, Tritt, and Wooten favored McCullough," the decision to terminate him must have been based on "subjective, irrational factors." We disagree. The record in support of the employer's conclusion is not so sparse, or the employer's conclusion so implausible, that McCullough's challenge to the *merits* of the decision can create a genuine issue about whether the employer's *motivation* was impermissible. Long testified that he looked at the totality of what was presented to him during the investigation, including the complaints, the investigators' findings, and the notes from the witness interviews, and concluded that none of the witnesses supported McCullough's allegations. He further testified that he "made a judgment call that was sound" based on the evidence before him. This evidence included an explanation by the independent resource investigators as to why there was no reason to disbelieve the female complainants, and how some of McCullough's counter-allegations were contradicted by neutral witnesses. McCullough points to nothing in the record suggesting that Long did not honestly believe that McCullough had committed sexual harassment on multiple occasions.

His arguments about Raczynski suffer from the same weakness. In the termination letter to McCullough, Raczynski stated that "[t]he consensus of the investigators and [Long] is that there is a preponderance of evidence to indicate that you exhibited inappropriate behavior of a sexual nature toward your co-workers," and that you did so on "multiple occasions." When asked during his deposition what facts supported McCullough's guilt, Raczynski read from the investigators' report and the attached addendum, and concluded that it was "the entire picture" that supported McCullough's guilt. Raczynski decided in favor of termination over lesser discipline, but nothing in the record indicates that he did not in good faith believe that McCullough committed sexual harassment and was untruthful to the investigators.

McCullough next claims that Raczynski and Long gave "shifting" and "false" explanations for their decisions. Pretext may be shown with evidence that "the

employer's reason for the termination has changed substantially over time," *Loeb v. Best Buy Co., Inc.*, 537 F.3d 867, 873 (8th Cir. 2008), but that did not occur here. The employer in this case relied consistently on the findings in the investigators' report. The investigators found that McCullough's allegations against Wooten and Tritt were not credible, and both Raczynski and Long testified to that effect in their depositions. Long and Raczynski stated, again based on the investigators' report, that "there is a preponderance of evidence to indicate" that McCullough sexually harassed his co-workers on multiple occasions.

Raczynski testified in his deposition that he also considered the high standards to which the COPH must be held, a consideration that he did not include in his termination letter. But we find nothing inconsistent or shifting about a decisionmaker considering the reputation of the institution he oversees when deciding whether to terminate an employee, even if he does not explicitly include that consideration in his list of stated justifications. The reasons given by Long and Raczynski all centered on the investigators' findings that McCullough engaged in repeated sexual harassment and was untruthful in his complaints. The record thus does not suggest that the reasons given by the decisionmakers changed substantially over time.

McCullough next contends that because the investigators did not follow UAMS policy to interview all of the witnesses whom he listed in his complaints, a jury reasonably could infer that the employer's justifications were a pretext for unlawful discrimination. In response, appellees urge that the investigators interviewed McCullough, Wooten, and Tritt, along with eight people listed in McCullough's complaints, and that they permissibly selected witnesses based on whom they believed would have the most knowledge about the allegations.

Violation of UAMS policy, in and of itself, does not support a finding that McCullough was fired on account of his sex. An employer "can certainly choose how to run its business, including not to follow its own personnel policies regarding

-11-

termination of an employee or handling claims of discrimination, as long as it does not unlawfully discriminate in doing so." *Haas v. Kelly Servs., Inc.*, 409 F.3d 1030, 1036 (8th Cir. 2005). The appropriate scope of investigation is a business judgment, and shortcomings in an investigation do not by themselves support an inference of discrimination. *Wheeler v. Aventis Pharms.*, 360 F.3d 853, 859 (8th Cir. 2004). Here, McCullough's complaint listed twenty-six people to interview, including such individuals as Raczynski's assistant's hair dresser, Elaine Wooten's husband, and another employee's wife. The investigators spoke to eleven. UAMS policy provides that "resource persons will attempt to interview all individuals identified by either party," and that "every effort will be made to ensure a thorough and timely investigation of the complaint." While the investigators in this case made a judgment to limit the number of interviews, McCullough provides no evidence that the investigators purposely ignored relevant information or otherwise truncated the inquiry because of a bias against men.

McCullough also asserts that neither Raczynski nor Long could identify during discovery what facts supported a finding that McCullough committed misconduct, and that this inability to articulate the basis for termination supports an inference of sex discrimination. This contention is not supported by the record. When asked in depositions about the termination, both Raczynski and Long repeatedly stressed the entirety of the evidence presented to them, including the report of the investigators.[3]

---

[3]McCullough's final argument in support of his claim of pretext is that counsel for appellees lodged improper speaking objections during the depositions of Raczynski and Long, and that the objections amounted to spoliation of evidence. He cites no authority for the proposition that improper objections amount to spoliation, and whatever the propriety of the disputed objections, the witnesses remained available to testify about any facts that favored McCullough. Sanctions may be appropriate in an egregious case of attorney misconduct, *e.g.*, *Unique Concepts, Inc. v. Brown*, 115 F.R.D. 292, 293-94 (S.D.N.Y. 1987) (awarding sanctions where plaintiff's counsel interposed statements other than objections as to form on ninety-one percent of the pages of a deposition), but McCullough did not seek this remedy in the district court.

For these reasons, we conclude that the district court properly granted summary judgment on McCullough's claims of sex discrimination.

## B.

McCullough's other discrimination claim is that Raczynski and Long retaliated against him based on protected activity. Title VII makes it unlawful for an employer to discriminate against an employee for "oppos[ing] any practice made unlawful by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). The ACRA contains a nearly identical prohibition. Ark. Ann. Code. § 16-123-108.

To establish a *prima facie* case of retaliation under Title VII and the ACRA, a plaintiff must show that he engaged in statutorily protected conduct, that defendants took an adverse employment action against him, and that there was a causal link between the two actions. *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 858 (8th Cir. 2005). Once a plaintiff has shown a *prima facie* case of retaliation, the burden shifts to the employer to proffer a legitimate, non-retaliatory basis for the adverse employment action. The plaintiff then bears the burden of proving that the employer's proffered reason was a mere pretext for a retaliatory motive. *Id.* at 860. Again, because the record has been fully developed in connection with the motion for summary judgment, we proceed to determine whether McCullough has provided sufficient evidence of retaliation to create a genuine issue for trial about "whether the employer acted based on an intent to retaliate rather than on a good faith belief that the employee violated a workplace rule." *Richey v. City of Independence*, 540 F.3d 779, 785 (8th Cir. 2008).

McCullough argues that he has direct evidence that he was terminated for filing sexual harassment complaints. He claims that Raczynski's termination letter states

-13-

that he was fired for filing complaints against Wooten and Tritt. The district court determined that the evidence did not constitute sufficient evidence of retaliation to make a submissible case, and we agree.

The termination letter lists several related reasons for McCullough's discharge. They can be reduced to two primary justifications, namely, that the evidence showed that he (1) sexually harassed his co-workers on multiple occasions and (2) filed untruthful complaints against Wooten and Tritt. Contrary to McCullough's conclusory assertion, the letter does not state that he was fired "because of the complaints he made against Wooten and Tritt." It states that he was discharged for filing *untruthful* complaints, as well as for sexually harassing his co-workers. Raczynski likewise testified that he fired McCullough *not* for "filing a complaint in general," but rather for filing *untruthful* complaints, and that he would have terminated McCullough regardless of whether he filed the complaints, because everyone "has a right to file a complaint." Viewing the termination letter in the light most favorable to McCullough, it indicates only that the decisionmakers believed that McCullough committed sexual harassment and was untruthful in his complaints.

The conclusion of the investigators that McCullough lacked credibility was supported by independent corroboration from neutral non-parties, *see Richey*, 540 F.3d at 785; *cf. Gilooly v. Mo. Dep't of Health*, 421 F.3d 734, 740-41 & n.2 (8th Cir. 2005), and McCullough failed to produce additional evidence that the employer really acted because of the employee's protected activity.[4] McCullough reiterates the

---

[4]The investigators' report explained that neutral non-party witnesses contradicted important aspects of McCullough's account. (App. 327-28). McCullough claimed that he and his officemate asked Tritt to stop engaging in flirtatious behavior at McCullough's office while dressed inappropriately, but the officemate said that this was "definitely not the case." In response to Wooten's complaint that McCullough's harassment began with McCullough bringing her chocolate candy, McCullough asserted that he and Dr. John Chelonis collaborated to get the candy for Wooten to cheer her up. Chelonis, however, denied any involvement

-14-

"spoliation" argument advanced in connection with his sex discrimination claim, *supra*, at 12 n.3, and we again find it unpersuasive. Summary judgment was therefore appropriate.

## III.

We next consider McCullough's claim that he was retaliated against for exercising his free speech rights under the First Amendment and the Arkansas Constitution. *See* Ark. Const. art. II, § 6; Ark. Code. Ann. § 16-123-105. McCullough claims that his complaints against Wooten and Tritt constitute protected speech, and that he was fired in retaliation for that speech. McCullough does not contend that the protections under the free speech provision of the Arkansas Constitution are more generous than those under the First Amendment, and we find no Arkansas authority for that proposition. Accordingly, we analyze both his state and his federal constitutional claims under the standards governing First Amendment retaliation.

To establish his free speech retaliation claim, McCullough must prove that he engaged in protected activity, and that this activity was a substantial or motivating factor in his employer's decision to terminate him. *Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007); *Cox v. Dardanelle Pub. Sch. Dist.*, 790 F.2d 668, 672-676 (8th Cir. 1986). If he meets this burden, then the burden of proof shifts to the

---

in getting a gift for Wooten, and McCullough eventually admitted that he alone presented the candy. In addition, one witness identified by McCullough, Leslie Hitt, told investigators that Wooten had approached her on three separate occasions to report that McCullough had engaged in what Wooten considered "inappropriate conversations of sexual advances." The decisionmakers, therefore, were presented with more substantial evidence than a simple "he said, she said" dispute between two employees. *See Richey*, 540 F.3d at 785.

employer to show that it would have taken the same action regardless of his free speech activities. *Altonen*, 487 F.3d at 559.

To determine whether McCullough's speech is protected, we follow the two-step analysis developed in *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). *See Altonen*, 487 F.3d at 559. The first question is whether McCullough's speech can be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers*, 461 U.S. 138, 146 (1983); *Sparr v. Ward*, 306 F.3d 589, 594 (8th Cir. 2002). If the answer is no, then McCullough's claim fails because no protected speech is at issue. If the answer is yes, then McCullough's "right to comment on matters of public concern must next be balanced with the [employer's] interest in promoting the efficiency of the public services it performs through its employees." *Sparr*, 306 F.3d at 594 (internal quotation omitted). "The inquiry into the protected status of speech is one of law, not fact." *Connick*, 461 U.S. at 148 n.7. Because we answer the first question in the negative, we need not address the second.

McCullough argues that his speech is protected because he spoke as a citizen on a matter of public importance, namely, sexual harassment in the workplace, and that he did so with the hope of changing the environment at the COPH. He also claims that he complained about matters beyond his personal interests, such as the effect of sexual harassment on the COPH's public image and efficiency. Appellees respond that although McCullough's complaints involve sexual harassment, they do not constitute speech on a matter of public concern, because he was merely responding to allegations against him and was therefore motivated to keep his job.

The district court concluded that McCullough's speech was not constitutionally protected. It determined that because McCullough filed his complaints in response to an investigation against him, his primary interest was to remain employed rather than to speak as a citizen on public matters. Further, the court noted that the principal focus of his complaints was the propriety of the behavior of the female complainants,

as opposed to the propriety of the college's discharge of its duties as a public institution. We agree with this assessment.

"When speech relates both to an employee's private interests as well as matters of public concern, the speech is protected if it is primarily motivated by public concern." *Altonen*, 487 F.3d at 559. Motivation is gauged by evaluating the speech's content, form, and context. *Id.*

The context here is that McCullough filed his complaints only after the college asked him to respond to the complaints of sexual harassment against him. He thus did not inform the public about alleged sexual harassment at the COPH in the first instance on his own initiative. In addition, McCullough's complaints were entirely internal to the COPH and the investigation team. *See Sparr*, 306 F.3d at 595. These factors favor a conclusion that his primary motivation was private.

The content of McCullough's complaints also supports the conclusion that his primary motivation was a matter of private concern. In his complaint against Tritt, McCullough wrote that he filed the complaint because she harassed him, and because he wanted to stop her from spreading false rumors about him. He stated that because she "thought it pertinent [in her complaint] . . . to bring in [their] historical work relationship," he would do the same in his complaint against her. McCullough's complaint against Wooten asserted that she was "jealous" and "possessive" of him, that she spread rumors about other colleagues, that she commented on his behind and directed cat-calls at him, and that she discussed her sex life with him. McCullough also complained that Wooten's behavior was not "good for the organization," because it allegedly disrupted the work environment, and would make others think that management condoned her conduct. Finally, he claimed that Wooten exploited her relationship with Raczynski.

These complaints broach multiple topics, but the dominant theme is that of an employee engaged in a personal battle to retain his job. McCullough does raise important public issues of sexual harassment and organizational disruption, but "the mere fact that the topic of [an] employee's speech [is] one in which the public might or would have had a great interest is of little moment." *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993) (internal quotation omitted). Our focus remains on McCullough's purpose in speaking, and we agree with the district court that the better view is that these complaints are primarily oriented toward McCullough's self-interest, rather than the public interest. We therefore conclude that the district court properly granted summary judgment on the free speech claims.

\*       \*       \*

The judgment of the district court is affirmed.

_____