SHEPHERD, Circuit Judge.
Cynthia Wilson appeals the district court’s[1] grant of summary judgment in favor of Jayne Miller on Wilson’s 42 U.S.C. § 1983 First Amendment retaliation claim and the court’s dismissal of Wilson’s supplemental claim against Miller and the Minneapolis Park and Recreation Board *966 asserting discrimination in violation of the Minnesota Human Rights Act. The district court found that Wilson could not demonstrate that her protected, speech was a substantial or motivating factor in her adverse employment actions., We affirm.
I.
We derive our recitation of the facts from the district court’s factual summary made in the light most favorable to Wilson, the non-moving party. Henderson v. Munn, 439 F.3d 497, 499 n. 2 (8th Cir.2006). The Minneapolis Park and Recreation Board (the “MPRB”) has employed Appellant' Cynthia Wilson, an African American' woman, in various capacities since 1989. Since 2010, Appellee Jayne Miller has held the position' of MPRB superintendent.
In January 2011, before Wilson engaged in the protected speech at issue in this case, the MPRB terminated Wilson for failing to supervise a staff member properly. Wilson challenged her termination and was reinstated with a 30-day suspension after a civil service hearing officer concluded that termination was too harsh. According to the civil service hearing officer, Wilson had never received any discipline prior to the recommendation for her termination and her past .performance evaluations had always been “good” to “excellent.” Appellee Miller attended the hearing and heard Wilson’s testimony. Upon Wilson’s return to work in July 2011, Wilson was directed to reimburse the MPRB for personal calls made on her cell phone issued by the MPRB. She refused to compensate the MPRB' and was suspended ohe day for insubordination.
In the instant case, Wilson alleges that Miller retaliated against her for engaging in activity protected by the First Amendment on two separate occasions. First, on September 13, 2012 the Minnesota Spokesman-Recorder published an article highlighting complaints of racial discrimination within the MPRB. The article quoted Wilson, who discussed her concerns about racial discrimination. Miller was also quoted in the article. The second occasion occurred on December 18, 2012, when Wilson attended an open budget meeting for all 'departments of the MPRB. The MPRB employées were encouraged to ask questions and make comments about the budget process. During the meeting, Wilson inquired into whether the MPRB was going to continue to use a certain consultant who had identified specific problems regarding the work environment at the MPRB.
Wilson asserts that Miller caused her to suffer several adverse employment actions after the - newspaper published her remarks and after Wilson voiced concerns in the budget meeting. First, Wilson argues that she was denied three opportunities to advance within the MPRB, when she was not selected for the positions of Deputy Superintendent, Assistant Superintendent of Recreation, or Director of Recreation Centers and Programs. The posting for Deputy Superintendent was “kind of hidden” on the MPRB’s website, and Miller argues that the hidden porting was retaliation for her comments published in the newspaper. Wilson further alleges that Miller put the search for the Assistant Superintendent of Recreation “on hold” and eventually awarded the position to an external candidate in' retaliation for Wilson’s reinstatement. Iri‘March 2013, Wilson applied, interviewed, and was á finalist for the position of Director of Recreation Centers and Programs. Ultimately, she was not selected for the position. She asserts that Miller provided negative comments in, Wilson’s 2012 performance evaluation regarding Wilson’s comments in the budget meeting, and that hiring managers did not choose her as the Director of Recreation Centers and Programs because of the performance evaluation.
*967 Specifically, the performance evaluation provided that Wilson “needs improvement” in the areas of communication skills and interpersonal skills. The comments in these areas referenced Wilson’s remarks at the budget meeting. On December 30, 2012, Wilson emailed Teresa Chaika, the MPRB’s Human Resources Manager, complaining that Miller retaliated against her in the annual evaluation for Wilson’s questions during the budget, meeting. After Wilson’s complaint to Human Resources, her performance ratings in certain areas were amended. In the category of communications skills, her rating was changed from “needs improvement” to “meets expectations.” In the areas of decision-making/problem-solving and interpersonal skills, her performance ratings were changed from “meets expectations” to “needs improvement.” Wilson was marked as “meets expectations” in all other categories and was given an overall rating of “meets expectations.”
In addition to the performance evaluation and the failure to promote Wilson, Wilson alleges that a performance improvement plan and two suspensions were retaliatory acts. In. April 2013, one of Wilson’s supervisors instructed Wilson to discipline two of Wilson’s subordinates for their work-related conduct. Wilson completed the paperwork for written warnings but refused to sign the .written warning for one employee, insisting that it did not accurately reflect-her view of the appropriate disciplinary measure. As a result, Wilson received a ten-day suspension without pay for insubordination. Upon her return to work, she refused to sign the second employee’s warning and received another unpaid suspension, this time-for twenty days. When Wilson returned to . work in July 20.13, Wilson’s manager placed her on a performance improvement plan as a result of her two suspensions.
Wilson filed this action, asserting claims under 42 U.S.C. § 1983 for violations of her First Amendment- and equal protection rights, as well as for reprisal and aiding and abetting race and . color discrimination under the Minnesota Human Rights Act. Later, she voluntarily withdrew the § 1983 equal protection claim. ' ■
The district codrt granted in part Defendants’ motion for summary judgment and declined to exercise jurisdiction over the remaining state law claim. Specifically, the district court held that Wilson failed to establish á municipal “custom” of unconstitutional misconduct by the MPRB or that her protected speech was a substantial or motivating factor in the employment decisions, and thus the MPRB and Miller were entitled to summary judgment on Wiison’s § 1983 First Amendment retaliation claim. Finally, the district court declined to exercise supplemental jurisdiction over Wilson’s state law claims. On appeal, Wilson contests the district court’s holding regarding Miller’s individual liability and the court’s dismissal of the supplemental state law claims. We address these arguments in turn.
II.-
A district court, “shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as' a matter of law.” Fed. R.Civ.P. 56. “We review the1 district court’s grant of summary judgment de novo, drawing all reasonable inferences, without resort to speculation, in favor of the non-moving party.” Carrington v. City of Des Moines, Iowa, 481 F.3d 1046, 1049 (8th Cir.2007) (quoting Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 810 (8th Cir.2005)).
To establish a prima facie case of First Amendment retaliation, a plaintiff *968 must allege and show that: “(1) she engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against her; and (3) the protected conduct was a substantial or motivating factor in the defendant’s decision, to take the adverse employment action.” Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654-655 (8th Cir.2007) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). If the plaintiff satisfies this burden, then the burden shifts to the defendant “to demonstrate that the same employment action would have been taken in the absence of the protected activity.” Id. at 655 (citing Mt. Healthy, 429 U.S. at 287, 97 S.Ct. 568).
Miller concedes that Wilson’s newspaper interview as well as Wilson’s .questions and comments during the open budget meeting are protected by the First Amendment, but argues that her performance evaluation was not an adverse employment action. Wilson asserts that the negative performance evaluation, suspensions and write-ups, a performance improvement plan,- and refusal to promote her constituted adverse employment actions.
A. Performance Evaluation
“To constitute an adverse employment action, the employer’s decision must effect a material change in the terms or conditions of employment.” Hughes v. Stottlemyre, 454 F.3d 791, 796 (8th Cir.2006). Standing alone, a poor performance rating does not constitute an adverse employment action because it has no tangible effect on the employee’s conditions of employment. Turner v. Gonzales, 421 F.3d 688, 696 (8th Cir.2005). “An unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient’s employment.” Id. (quoting Spears v. Mo. Dep’t. of Corr. & Human Res., 210 F.3d 850, 854 (8th Cir.2000)).
In December 2012, Wilson received an annual performance evaluation for the period of January 2012 through December 2012. Miller participated in the evaluation, which stated that Wilson “needs improvement” on her communication and interpersonal skills. The comments in the evaluation from Wilson’s supervisors indicated that Wilson’s questions or comments in the budget meeting came across as “negative and non-constructive rather than someone who is seeking answers and constrictive and positive solutions for the betterment of the organization.” Additionally, Wilson’s remarks were “outside the purpose of the meeting, which is distracting for the other meeting attendees.” The supervisors’ comments were primarily targeted at Wilson’s demeanor in raising these concerns at the budget meeting. They did not criticize the content of her speech other than to state that the content was outside the scope of the meeting. In fact, one supervisor remarked that Wilson was “confident in asking questions and making comments in the meetings, but •sometimes her delivery style thwarts the message.”
The comments regarding Wilson’s demeanor were consistent with a 2011 performance review, completed prior to Wilson’s protected speech at issue in this case, which assessed Wilson’s performance during a probationary period following her reinstatement. In the area of communication, the 2011 performance review suggested to'Wilson that she “[b]e aware of how [she] comes across to others when presenting ideas, giving feedback, and addressing concerns. Put [herself] in the listeners’ shoes to self-analyze [her] tone and the unspoken characteristics of [her] communication, which have been perceived as defiant at times.” The 2011 performance re *969 view further indicated that Wilson needed improvement in the areas of communication and interpersonal skills.
The concerns regarding Wilson’s demeanor when she spoke at the 2012 budget meeting were only a small part of her 2012 performance evaluation. In the areas- of customer service, technical skills and knowledge, time management, and people management,- Wilson’s supervisors characterized her performance as meeting expectations and their comments were largely positive. Nevertheless, Wilson complained to Human Resources that her annual evaluation did not reflect her work performance and that Miller retaliated against her for her remarks in the budget meeting. Subsequently, Human Resources revised Wilson’s evaluation by changing the performance rating under communication skills from “needs improvement” to “meets expectations” and her performance rating under decision-making/problem-solving from “meets expectations” to “needs improvement.”
Wilson alleges that the 2012 performance evaluation had a tangible effect on her employment because it was available to the hiring managers who did not promote her to Director of Recreation Centers and Programs. Citing Altonen v. City of Minneapolis, 487 F.3d 554, 560 (8th Cir.2007), Wilson argues that the evidence gives rise to an “inference of retaliatory motive” and that a jury could find a causal link between her speech, the performance evaluation, and the failure to promote her. Nevertheless, like the plaintiff in Altonen, Wilson “points to no evidence in the record that [her] conjecture” contributed to the MPRB’s failure to promote her. See id. at 561. “Performance ratings that have a negative impact on promotion potential do not constitute an adverse employment action unless the rating actually led to the denial of the promotion.” Turner, 421 F.3d at 696. Wilson does not offer any evidence that the MPRB and Miller would have chosen her as the Director of Recreation Centers and Programs absent the comments in Wilson’s December 2012 performance evaluation regarding Wilson’s remarks in the budget meeting. See Turner, 421 F.3d at 696 (affirming the district court’s grant of summary judgment where the plaintiff failed to show that she would have gotten a promotion absent a negative performance review). In fact,. in; Wilson’s deposition, she asserted that, the failure to promote her to Director of Recreation Centers and Programs was because she is “militant” and “arrogant,” not because of her speech.
Further, Wilson has not presented any evidence that the performance evaluations were actually used in the promotion decision or; that the comments regarding Wilson’s protected speech negatively influenced, the decision. See Burchett v. Target Corp., 340 F.3d 510, 518-519 (8th Cir.2003) (holding that plaintiff presented insufficient evidence that a negative performance evaluation resulted in denial of transfer, and “[a] negative performance review is ... actionable only if the employer subsequently uses that review to alter the terms or conditions of employment to the detriment of the employee’’); Thomas v. Corwin, 483 F.3d 516, 529 (8th Cir.2007) (affirming district court’s grant of summary judgment where there was “no indication the defendants used [plaintiffs] evaluation as a basis to alter détrimentally the terms or conditions of [plaintiffs] employment”). From the record before the Court, no reasonable jury could draw an inference that the MPRB and Miller did not promote Wilson ■ because ■ of comments in her 2012 performance evaluation.
B. Failures to Promote, Suspensions,, and Performance Improvement Plan
Wilson further alleges that in retaliation for her protected speech, Miller denied *970 Wilson a promotion and caused Wilson to receive two suspensions, a- written reprimand, and led to the imposition of a performance improvement plan. Additionally, Wilson asserts that after the newspaper published Wilson’s comments, Miller posh-ed a job opening on the MPRB’s website in a hidden fashion, hoping that Wilson would not discover the open position. Miller disputes that Wilson’s protected speech played a substantial or motivating role in these employment actions.
In her deposition, Wilson did not testify that the claiméd adverse employment actions were in retaliation for her protected speech or that her protected speech was a substantial or motivating factor in thé employment decisions. She asserted that the MPRB and Miller reprimanded' her and denied her a promotion in retaliation for her reinstatement following a civil service hearing, not acting like a team player, and 'being “militant” and “arrogant,” among other reasons unrelated to the comments at the budget meeting and those published in the newspaper. Thus, the district court found that Miller was entitled to summary judgment. -
Wilson argues that the deposition testimony cited by the district court was not specifically tailored to her § 1983 claim because she was also asserting a claim for reprisal pursuant to the Minnesota Human- Rights, Act. However, Wilson does not offer any evidence, apart, from her Complaint and an email she sent to Human Resources Manager Teresa Chai-ka, to support her contention that her protected speech was a substantial or motivating factor in the claimed adverse employment actions. In her email to Chaika, Wilson alleged that portions of her 2012 performance evaluation were retaliatory. However, as discussed above, a negative performance evaluation does not constitute an adverse employment action unless it causes some tangible effect on the conditions of - employment, which Wilson has failed to demonstrate. Furthermore, at the summary judgment stage, Wilson cannot rely solely upon the bare allegations in her Complaint and her email to Chaika. A plaintiff may not simply cite “unsupported self-serving allegations, but must substantiate [her] allegations with sufficient probative evidence.” Reed v. City of St. Charles, Mo., 561 F.3d 788, 790-91 (8th Cir.2009) (quoting Bass v. SBC Commc’ns, Inc., 418 F.3d 870, 872-73 (8th Cir.2005)); Thomas, 483 F.3d at 527 (“Mere allegations, unsupported by specific facts or evidence, beyond the nonmoving -party’s own conclusions, are- insufficient to withstand a motion for summary judgment.”). Moreover, the MPRB and Miller have proffered non-retaliatory reasons for the alleged adverse employment actions, including Wilson’s failure to. reprimand subordinates appropriately. We need not reach this stage of the analysis however, because Wilson has failed to establish a prima facie case of First Amendment retaliation. Without any evidence in the record probative of Wilson’s allegations, no reasonable jury could find that Wilson’s speech was a substantial or motivating factor in the claimed adverse employment actions. Accordingly, Miller is entitled to summary judgment.
HL
We review a district court’s decision not to exercise supplemental jurisdiction over pendent claims for an abuse of discretion. Williams v. Hobbs, 658 F.3d 842, 852-53 (8th Cir.2011). A federal district court has discretionaiy power to decline the exercise of supplemental jurisdiction where the court has “dismissed all claims over which it has original jurisdiction”. 28-U.S.C. § 13.67(c)(3). The factors acourt should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity. Carner *971 gie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). “[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims.” Johnson v. City of Shorewood, Minnesota, 360 F.3d 810, 819 (8th Cir.2004) (quoting Cohill, 484 U.S. at 350 n. 7, 108 S.Ct. 614).
Here, all federal claims were dismissed before trial. Wilson points to no factor that distinguishes this case from the usual cáse. Therefore,- the balance of the factors indicates that Wilson’s Minnesota Human Rights Act claim properly belongs in state court. See Cohill, 484 U.S. at 350, 108 S.Ct. 614. Accordingly, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state law claims.
IV.
. For the foregoing reasons, we affirm the judgment of the district court.

. The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.