# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3333

_____

| | | |
|---|---|---|
| Ricky Smith, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Insley's Inc., also known as | * | |
| Jimmy's Wrecker Service, | * | |
| also known as Insley's | * | |
| Towing; Correctional Medical | * | |
| Services, Inc., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: May 18, 2007
Filed: August 22, 2007

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

Ricky Smith appeals from an adverse grant of summary judgment in favor of Insley's Inc., in this 42 U.S.C. § 1983 case. We reverse.

## I.    BACKGROUND

We consider the evidence and all reasonable inferences in the light most favorable to Smith at this stage of the proceedings. Weyrauch v. Cigna Life Ins. Co., 416 F.3d 717, 720 (8th Cir. 2005). Smith was arrested on March 20, 2003, while at his girlfriend's residence. At the time of his arrest, his truck was towed by Insley's from the girlfriend's residence to Insley's impound lot. Insley's is a private towing corporation located in Pine Bluff, Arkansas, which, along with other towing companies in Pine Bluff, is in a monthly rotation pursuant to a contract with the sheriff's office to tow and store impounded vehicles. March 2003 was Insley's month.

Smith was told by law enforcement that they were seizing his truck as evidence in a murder investigation. On March 31, 2003, Insley's mailed a certified letter to the address where Smith's truck was registered, notifying him that the truck would be sold if he did not pay towing and storage costs. This letter was sent pursuant to the Arkansas "Removal of Unattended or Abandoned Vehicles" statute, Arkansas Code Annotated §§ 27-50-1201, et seq. Smith was still incarcerated when that letter was sent, but the letter was received by his mother. After receiving this letter, his mother began efforts to retrieve the truck and Smith's belongings in the truck. His mother went to Insley's and was unsuccessful in retrieving the truck. His mother contacted the sheriff's office about the truck, and Officer McFatridge told her that the truck was still being used for evidentiary purposes, and asked her not to call the sheriff's office again about the matter. Smith's defense attorney also inquired of the sheriff's office when the truck could be released, and was told by McFatridge that the defense attorney would be notified when the vehicle was no longer needed for evidence.[1] The

---

[1]Insley's contends that statements made by Pine Bluff officials to Smith's attorney are inadmissible hearsay, and should not have been considered by the district court on the motion for summary judgment, under Federal Rule of Civil Procedure 56(e). However, Officer McFatridge and other members of the sheriff's office were originally named in the complaint. The statements made by members of the sheriff's

defense attorney was notified that the vehicle could be released when an order to this effect was entered by a circuit court on August 19, 2003, pursuant to Arkansas Rule of Criminal Procedure 15.2.[2]  However, unbeknownst to Smith, who was released from jail on July 11, 2003, his mother, and his defense attorney, the vehicle had been sold by Insley's on July 28, 2003.

As a result of these actions, Smith brought a civil rights action pursuant to 42 U.S.C. § 1983, and state law claims against Insley's.[3]  The district court granted Insley's motion for summary judgment, finding that even if Insley's acted under color of state law, it did not act unconstitutionally because it complied with Arkansas law by sending the March 2003 certified letter.  The district court found that this letter gave Smith adequate notice that Insley's would sell Smith's vehicle if towing and storing charges were not paid.  The district court further found that Insley's obtained a priority lien on the truck when it was impounded, and that Smith's failure to timely reclaim the vehicle constituted a waiver of his rights to it.  The district court also dismissed Smith's state law claims, finding that he could not prevail on a conversion or outrage claim.

On appeal, Smith argues that the Arkansas abandoned car statute, sections 27-50-1201 et seq., does not govern this dispute, and instead,  Arkansas Criminal Procedure Rule 15.2 does.  Pursuant to Rule 15.2, Smith contends, Insley's had no

---

office about the availability of Smith's truck therefore were not hearsay. Fed. R. Evid. 801(d)(2).

[2]This rule governs the return of property that has been seized by the government.  Pursuant to this rule, a person in Arkansas who wishes to retrieve property seized by the government petitions a state circuit court in order to retrieve it. Walden v. Carmack, 156 F.3d 861, 874 (8th Cir. 1998).

[3]Smith originally sued other Pine Bluff public officials, but has not pursued those claims on appeal.

right to dispose of his truck until it had been released by court order in August 2003, and further, that Smith had no ability to reclaim the truck until it had been released by the court. Smith additionally argues that even if the abandoned car statute does apply, notice was premature and therefore deficient.

## II.    DISCUSSION

We review the grant of a summary judgment motion de novo and examine the record in the light most favorable to the nonmoving party. Altonen v. City of Minneapolis, 487 F.3d 554, 559 (8th Cir. 2007). Summary judgment is only appropriate if the evidence viewed in this manner demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.

Insley's argues that Smith defaulted on its motion for summary judgment by not responding in time. Insley's also argues that Smith did not comply with Eastern District of Arkansas local rules by filing a statement of disputed facts. Insley's argues that its statement of undisputed facts are deemed admitted. We agree that the record reflects that Smith filed his summary judgment response one business day after the due date, and that a statement of disputed facts was not included within this submission. Our review of the district court's electronic document report reflects that these arguments were made to the district court, but the district court did not reference them in its order granting summary judgment on the merits, implicitly rejecting these arguments.

District courts have broad discretion to set filing deadlines and enforce (or not enforce) local rules. Reasonover v. St. Louis County, Mo., 447 F.3d 569, 579 (8th Cir. 2006). We find that the district court did not abuse its discretion in accepting Smith's summary judgment response and considering the motion on the merits in this instance. Smith's response was due on Friday, July 14, 2006, and was filed on

-4-

Monday, July 17, 2006.  Other district court orders in this case (though not related to this precise issue) indicate that the district court and Smith's counsel had been in contact regarding the deadline, and that the district court expected Smith to file something by July 17, 2006.  Order at 1, <u>Ricky Smith v. Insley's Inc.</u>, No. 5:04CV0100 (Aug. 7, 2006) ("Plaintiff's attorney assured the Court that a response would be filed on July 17, 2006 . . . .").  Because the district court was satisfied that Smith adequately and timely responded to Insley's motion for summary judgment and chose to review the issue on the merits, we likewise will review the motion for summary judgment on the merits.

The Due Process Clause of the Fourteenth Amendment requires the government, prior to taking an action that will affect an interest in property, to provide notice reasonably calculated to inform interested parties of the pendency of the action and afford them an opportunity to object.  <u>Muhammed v. Routh Wrecker Serv.</u>, 14 F.3d 24, 25 (8th Cir. 1994).  A corporation acting under color of state law will be held liable under section 1983 for unconstitutional policies, but will not be liable on a respondeat superior theory.  <u>Sanders v. Sears, Roebuck & Co.</u>, 984 F.2d 972, 975-76 (8th Cir. 1993); <u>see</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978) (holding that a municipality could be liable under section 1983, but only for its unconstitutional policies, not simply through the actions of municipal representatives).  The key inquiry in making this determination is whether the corporation has an unconstitutional policy or custom, or an individual representing the company has taken actions which inflict injuries redressable by section 1983.  <u>Sanders</u>, 984 F.2d at 976.

Initially, we must determine whether Insley's, a private corporation, was a governmental actor under these facts for purposes of section 1983 liability.  Conduct causing a deprivation of civil rights must be "fairly attributable" to the state to be considered under color of state law.  <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982).  Factors to be considered include: the extent to which the actor relies on

governmental assistance and benefits; whether the actor is performing a traditional government function; and whether the incident is aggravated in a unique way by the incidents of governmental authority. Edmonson v. Leesville Concrete Co., 500 U.S. 614, 621-22 (1991).

Insley's argues that the proper focus is not whether it was a state actor when it towed the vehicle as part of the local sheriff department's rotating towing service, but rather, whether it was a state actor when it sold the vehicle–the conduct causing the alleged deprivation. Insley's argues that it was simply acting as a private citizen by foreclosing on a statutory lien when it sold Smith's truck.

First, we think it clear that Insley's was a state actor when it initially towed and stored the vehicle at the behest of the sheriff's office as part of an official criminal investigation. Insley's relied upon governmental benefits in performing the tow–as the sheriff's contracted vendor for this service, it had a monopoly on sheriff towing during March 2003. And it was performing the traditional governmental function of seizing and securing property for a criminal investigation. Finally, the situation was aggravated in a unique way by the incidents of governmental authority, because Smith's representatives were told by various government officials that they could *not* retrieve Smith's truck from Insley's due to the ongoing criminal investigation. We disagree with Insley's, however, that at some nebulous point it ceased being a state actor while handling Smith's truck. The character of the tow job did not change as Insley's held Smith's truck from March through July 2003. The entire time that Insley's stored Smith's truck, and later sold it, was as a result of the initial criminal investigation tow. Accordingly, we find that Smith has established the threshold section 1983 requirement that Insley's was acting under color of state law in towing, storing, and selling his vehicle.

Our next inquiry, then, is whether Insley's action of selling Smith's truck amounts to an unconstitutional policy, custom or action by someone representing

Insley's official policy. Insley's argues that in selling the truck, it was merely foreclosing its statutory lien pursuant to Arkansas Code Annotated §§ 27-50-1201 et seq. This statute, which purportedly gave Insley's a lien against the truck, applies to "unattended" or "abandoned" vehicles. Ark. Code Ann. § 27-50-1202(1), (2). According to the statute, unattended vehicles are those left without consent on public property, and abandoned vehicles are those vehicles which are both unattended and in which the owner has manifested an intent not to retake possession. Id.

We find that the abandoned car statute does not govern this situation because Smith's truck does not fit either the "abandoned" or "unattended" vehicle definitions. The vehicle was seized, from his girlfriend's property, for evidentiary use in a criminal investigation. Smith did not abandon it, nor did the sheriff's department abandon it. Smith did not manifest an intent not to retake possession–he, with the help of his attorney and mother, made numerous inquiries into how the truck could be retrieved. Smith's mother tried dealing directly with Insley's, and both his mother and his attorney were put off by the sheriff's office. While Insley's may not have known about the conversations between McFatridge and Smith's representatives, we find that Insley's and the sheriff's office were essentially the same state actor for the limited purpose of being responsible for the whereabouts of Smith's truck. And in reality, we doubt that it would be much of a burden on Insley's to communicate with the sheriff's office concerning the vehicles it tows and stores on behalf of the sheriff's office.

In short, we do not think the lien provisions in the Arkansas abandoned car statute operated to give Insley's a lien against Smith's truck. Instead, we think Smith's representatives ultimately invoked the appropriate procedure for the return of Smith's vehicle–Arkansas Rule of Criminal Procedure 15.2. For instance, in previous Arkansas due process cases based on the government's alleged wrongful retention of property, we denied the claims because the plaintiffs failed to take advantage of Arkansas' proper post-deprivation remedy–Rule 15.2. E.g., Walden v. Carmack, 156 F.3d 861, 874 (8th Cir. 1998).

Further, we note that even if the unattended or abandoned vehicle statute did apply in this situation, the notice sent by Insley's was premature and therefore deficient. Notice was sent by certified letter in March 2003. Insley's does not dispute that the sheriff's office did not complete its investigation until, at the earliest, mid-April 2003. Therefore it is clear that when Insley's sent the certified letter on March 31, 2003, Smith simply could not have taken the actions that Insley's outlined in the letter in order to claim the truck. Thus, we find that Insley's owner's action of selling Smith's truck was an action, by someone representing official company policy,[4] redressable by section 1983. Sanders, 984 F.2d at 975-76 (corporate liability standard). At the very least, Smith is entitled to prove at trial that Insley's officials took and disposed of Smith's property without proper notice or a meaningful opportunity to object. Accordingly, we find that the district court erred in granting summary judgment in favor of Insley's on Smith's 42 U.S.C. § 1983 claim and reverse and remand for trial.

Smith also appeals the district court's denial of his state law claims under the Arkansas Civil Rights Act (ACRA), and for conversion and outrage. The ACRA provides a cause of action for damages for "the deprivation of any rights . . . secured by the Arkansas Constitution" by any person acting under color of state law. Ark.

---

[4]Insley's cannot seriously contend that Smith is attempting to hold it liable under a respondeat superior theory of liability. Jeff Insley represented during his deposition that he was Insley's corporate representative, and it was clear from his testimony that he was the decision-maker with regard to selling Smith's truck. Jeff Insley's decisions clearly represented the company's "official policy." Sanders, 984 F.2d at 976. Sanders and similar cases dealing with the respondeat superior situation hold that a private corporation cannot be held liable under section 1983 "'solely because it employs a tortfeasor.'" Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003) (quoting Monell, 436 U.S. at 691). The rationale behind this principle is that corporations or municipalities should not be held liable for employee actions which the organization likely does not know are occurring. That situation is not present in this case.

Code Ann. § 16-123-105(a). The statute further provides that, in construing this section, "a court may look for guidance to state and federal decisions interpreting . . . 42 U.S.C. § 1983." Ark. Code Ann. § 16-123-105(c). Smith's ACRA claim is essentially the same as his federal due process claim, and we therefore reverse and remand the district court's grant of summary judgment on this claim for the same reasons as the federal claim.

To prevail on a claim of conversion, Smith must show that Insley's intentionally took or exercised possession or control over his truck in violation of his rights. McQuillan v. Mercedes-Benz Credit Corp., 961 S.W.2d 729, 732 (Ark. 1998). We have already determined that there is a triable issue as to whether Insley's violated Smith's right to due process. And, viewing the facts in the light most favorable to Smith, it appears that Insley's intentionally acted when it made the decision to sell Smith's vehicle. See id. (holding that intent requirement was not that of conscious wrongdoing, but the intent to exercise dominion or control over the property in violation of the owner's rights). In light of this, we find that Smith's conversion claim should survive summary judgment as well.

Smith's claim of outrage requires a different result, however. In order to succeed on a tort of outrage claim under Arkansas law, a plaintiff must prove that:

> 1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; 2) the conduct was extreme and outrageous, and was utterly intolerable in a civilized community; 3) the defendant's conduct was the cause of the plaintiff's distress; and 4) the plaintiff's emotional distress . . . was so severe that no reasonable person could be expected to endure it.

Hollomon v. Keadle, 931 S.W.2d 413, 415 (Ark. 1996). We agree with the district court's ultimate conclusion that the sale of Smith's truck in these circumstances does

not meet the onerous test necessary to succeed on the tort of outrage, and we affirm the district court's grant of summary judgment to Insley's on this claim.

## III.   CONCLUSION

We reverse the district court's grant of summary judgment on the 42 U.S.C. § 1983, ACRA, and conversion claims, and remand for further proceedings.

_____