NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 22-1705

———————

RONALD JAMES MADERO,
                                                    Appellant

v.

OFFICER CHRISTINE LUFFEY, in her official capacity; MARY KAY GENTERT;
TARRA PROVIDENT; HOMELESS CAT MANAGEMENT TEAM;
HUMANE ANIMAL RESCUE; JAMIE WILSON; SARA ANDERSON;
DONNA HUGHES; JESSICA SERBIN; HALA NEUMAH;
DEVON KLINGENSMITH; SARAH SHIVELLY

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. No. 2-19-cv-00700)
District Judge:  Honorable William S. Stickman, IV

———————

Argued on September 27, 2023

Before: KRAUSE, ROTH and AMBRO, <u>Circuit Judges</u>

(Opinion filed: June 20, 2024)

Carolyn B. McGee
Jeremy A. Mercer*          **(ARGUED)**
Nelson Mullins
6 PPG Place
7th Floor
Pittsburgh, PA 15222

        Counsel for Appellant

—————————
*Attorney Jeremy A. Mercer withdrew appearance on December 18, 2023

Andrew R. Benedict
Robert E. Brookman          (**ARGUED**)
Sharon Piper Donovan
BBC Law
2005 Market Street
Suite 1940
Philadelphia, PA 19103

     Counsel for Appellees

———————

OPINION[*]

———————

ROTH, <u>Circuit Judge</u>

Ronald Madero alleges that the City of Pittsburgh illegally seized his forty-two cats and transported them to a shelter that contracts with the City to hold animals that are evidence in criminal prosecutions. The City charged Madero with cruelty to animals. Before the prosecution ended, the shelter euthanized or adopted out the cats. Madero sued the shelter for violation of his Fourteenth Amendment rights, conversion, and trespass to chattels. The District Court dismissed those claims. We will vacate the dismissal order and remand the case for further proceedings.

I.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Madero lives with his adult son in one side of a duplex, 5221½ Lytle Street.[1]  In the other side of the duplex, 5223 Lytle Street, Madero sheltered over forty cats.[2]  In May 2017, Madero's neighbor called Animal Care and Control (ACC) to complain about kittens that had been abandoned in front of her house.  An ACC employee emailed Pittsburgh Police Officer Christine Luffey about the complaint.  In June, Luffey traveled with a non-officer, Mary Gentert, to Madero's residence.[3]  Madero claims that they told him they wanted to search the duplex and he refused, that Luffey then asserted she had a warrant and "could bust down his door" to execute it,[4] and that Gentert was there to spay and neuter his cats when, in reality, Gentert had come to assist Luffey with the search.

While Luffey stayed outside with Madero, Gentert entered the duplex and took photos of the cats.  Based upon those photos, Luffey obtained a warrant to search 5223 Lytle Street.  A few weeks later, Luffey came back and seized forty-two cats.  Luffey charged Madero with numerous counts of cruelty to animals.  Madero pleaded *nolo contendere* to twenty counts of disorderly conduct and was sentenced to ninety days of probation on each count.

Luffey had the cats transferred to Humane Animal Rescue (HAR).  HAR is a shelter that contracts with the City to accept, provide veterinary care for, and house animals that are seized as evidence for the City's criminal prosecutions.  HAR is paid by the City for

---

[1] His son owns both sides of the property.
[2] The property sits on a dead-end street that is frequently used by people to abandon cats, many in unhealthy condition.
[3] At the time of the search, Gentert volunteered with the Homeless Cat Management Team. She occasionally helped Luffey with animal-related cases.
[4] Appx. 8.

3

these services. Madero asserts that HAR euthanized twelve of the cats and adopted out the remaining cats without notifying him.[5]

Madero sued HAR (collectively, HAR and its employees) for violation of his Fourteenth Amendment rights, conversion, and trespass to chattels.[6] The court granted HAR's motion to dismiss with prejudice for failure to state a claim. Madero requested leave to amend his complaint and then filed a motion to reconsider, citing additional evidence he could include in an amended complaint that would address the purported factual deficiencies. The court denied the request and motion. Madero appeals.[7]

II.

We exercise plenary review of a district court's dismissal under Rule 12(b)(6).[8] We "accept as true all of the allegations contained in a complaint."[9] Reasonable inferences must be drawn in favor of the non-movant.[10] Only legal conclusions, formulaic recitations of the elements, or naked assertions devoid of any factual enhancement are not entitled to the presumption of validity.[11]

---

[5] Madero was not told where his cats were stored. He informed the court that he could plead additional facts to show he made inquiries to try to locate his cats, did not know of HAR, and did not know his cats were taken there.

[6] He also sued Luffey and other defendants on multiple grounds. The claims against these non-HAR defendants have either been dismissed, settled, or otherwise disposed of.

[7] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under § 1291.

[8] *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 708 (3d Cir. 2020).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Ricks v. Shover*, 891 F.3d 468, 472 (3d Cir. 2018).

[10] *Bell v. Cheswick Generating Station*, 734 F.3d 188, 193 n.5 (3d Cir. 2013).

[11] *Iqbal*, 556 U.S. at 678.

4

A.

Madero argues the District Court erred in dismissing his 42 U.S.C. § 1983 claims because it ignored well-pleaded facts. Section 1983 provides plaintiffs the right to sue an individual or entity acting "under color of state law" for violations of their constitutional rights.[12] Under the public function test, the state action requirement is satisfied when "the private entity has exercised powers that are traditionally the exclusive prerogative of the state."[13] That is because "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations."[14]

The District Court dismissed Madero's § 1983 claims against HAR because it found he "has done nothing more than allege in a conclusory fashion that [HAR was] acting under the color of state law."[15] To the contrary, we conclude that Madero sufficiently pled facts demonstrating that HAR was a state actor when it served as an evidence-retention facility for the City. In support, Madero pointed to an email from HAR's Program Manager to Luffey, asking whether HAR needed to store Madero's cats "as evidence" or if the cats could be discarded.[16] He also pleaded details about the City's contract with HAR. He

---

[12] *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995) (quotation marks omitted); *see* 42 U.S.C. § 1983.

[13] *Mark*, 51 F.3d at 1142 (emphasis omitted) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982)). We have recognized other tests to determine state actor status but focus exclusively on the public function test because it is the most applicable here.

[14] *Robinson v. Canterbury Vill., Inc.*, 848 F.2d 424, 428 (3d Cir. 1988) (quotation marks omitted).

[15] Appx. 32.

[16] Appx. 90.

noted that the contract required HAR to perform the municipal function of housing and caring for animals brought by animal control pursuant to criminal proceedings and specified how much money HAR receives per animal.

A sister Courts of Appeals' decision aligns with ours. In *Smith v. Insley's Inc.*, a sheriff's office contracted with one company to tow and store vehicles as a part of criminal investigations.[17] The Eighth Circuit Court of Appeals held that "securing property for a criminal investigation" is a "traditional governmental function" and meets the public function test.[18] The same is true here. HAR has an contract with the City; it participates in criminal cases involving seized animals;[19] and it is required to hold seized animals pursuant to search warrants. HAR held Madero's cats as evidence for the City.

We conclude that Madero sufficiently pleaded that HAR is a state actor.[20] For that reason, the District Court erred in dismissing his § 1983 claims against HAR.[21]

B.

---

[17] 499 F.3d 875, 878 (8th Cir. 2007).
[18] *Id.* at 880.
[19] Appx. 64–65.
[20] Judge Ambro would instead vacate because HAR is a state actor pursuant to *West v. Atkins*, 487 U.S. 42 (1988). Per *West*, a defendant is a state actor if (a) the state owed the plaintiff a duty, (b) the defendant accepted the state's delegation of that duty, and (c) because of state compulsion, the plaintiff was required to accept performance of the duty from the defendant. *Id.* at 55–56. Pittsburgh owed Madero a duty to safekeep his cats while they were held as evidence. *United States v. Scarfo*, 41 F.4th 136, 223 (3d Cir. 2022). Madero sufficiently alleges that HAR accepted Pittsburgh's delegation of that duty through its contract and actions in this case. He also plausibly claims that he had no choice but to accept HAR as the custodian of his cats because of Pittsburgh's conduct during the raid.
[21] We need not address whether the court erroneously dismissed Madero's complaint *with prejudice*, or whether it abused its discretion by denying the motion for reconsideration.

Madero also asserts that the District Court erred by dismissing his conversion and trespass to chattels claims.

While Pennsylvania courts have held that the torts are "similar," they note the distinct elements of each.[22]  Conversion is "the deprivation of another's right of property in, or use of possession of, a chattel . . . without the owner's consent and without lawful justification."[23]  By contrast, a trespass to chattels claim requires only that the offending party "dispossess another of the chattel, or use or intermeddle with a chattel in the possession of another."[24]  Relying on the Restatement (Second) of Torts §§ 265 and 266,[25] the court held both torts require that defendants acted "without lawful justification."[26]  It then concluded that because HAR received the cats from Luffey pursuant to a warrant,

---

[22] *See, e.g.*, *Sherwood v. Farber*, 2021 WL 5027393, at *6 (Pa. Super. Ct. Oct. 29, 2021); *Spickler v. Lombardo*, 3 Pa. D. & C.3d 591, 600 (Ct. Comm. Pl. 1977).

[23] *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n.3 (Pa. Super. Ct. 2000) (quotation marks omitted).  The District Court held that Madero sufficiently pleaded facts to support ownership of the cats, and we agree.

[24] *Pestco, Inc. v. Associated Prods., Inc.*, 880 A.2d 700, 708 (Pa. Super. Ct. 2005) (cleaned up) (citing Restatements (Second) of Torts § 217); *see also QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 599–600 (E.D. Pa. 2016).

[25] Restatement (Second) of Torts § 265 (Am. L. Inst. 1965) states:
> One is privileged to commit an act which would otherwise be a trespass to a chattel or a conversion if he is acting in discharge of a duty or authority created by law to preserve the public safety, health, peace, or other public interest, and his act is reasonably necessary to the performance of his duty or the exercise of his authority.

Restatement (Second) of Torts § 266 (Am. L. Inst. 1965) states:
> One is privileged to commit acts which would otherwise be a trespass to a chattel or a conversion when he acts pursuant to a court order which is valid or fair on its face.

[26] Appx. 36.  The District Court was tasked with predicting how the Pennsylvania Supreme Court would rule on this issue.  *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990).  We do the same on review.  *See id.*

HAR was not liable. However, no Pennsylvania court has applied the "without lawful justification" element to a trespass to chattels claim and we decline to do so here.[27]

Whatever the import of "lawful justification," we conclude that Madero had alleged facts sufficient to state claims for conversion and trespass to chattels. First, the Restatement sections are inapplicable at this stage of the litigation because they address an affirmative defense, and "an affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6)."[28] In addition, Madero's claims are not based on HAR's receipt of the cats, but rather on its wrongful destruction and disposition of them. Madero sufficiently pleaded that HAR did not receive a proper written surrender and failed to provide him notice about where his cats were taken and how to seek their return through the proper channels. Although there are several issues, such as who can own a stray cat and whether HAR received the cats in good faith, pursuant to a warrant, issues that may cause problems later in this litigation, at this early stage, the conversion and trespass to chattels claims against HAR should proceed.[29]

---

[27] HAR cites cases in which courts from other states have adopted these provisions, but none address the applicability of the "without lawful justification" element to a trespass to chattels claim. Indeed, one case to which HAR cites, *Blake v. Town of Delaware City*, 441 F. Supp. 1189, 1205 n. 64 (D. Del. 1977), states that "[a]lthough the original seizure might have been privileged . . . (*see* Restatement Second of Torts § 265 & comment d), such a privilege would not excuse the failure to return [the property] after the charges against [the plaintiff] were dismissed."

[28] *In re Adams Golf, Inc. Sec. Lit.*, 381 F.3d 267, 277 (3d Cir. 2004) (citing *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) ("[L]itigants need not try to plead around defenses.")).

[29] *Blake*, 441 F. Supp. at 1205 n.64; *see also Commonwealth v. Gonzalez*, 588 A.2d 528, 535–37 (Pa. Super. Ct. 1991); *L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.*, 777 A.2d 1090, 1095 (Pa. Super. Ct. 2001).

## III.

For the above reasons, we will vacate the District Court's order and remand for further proceedings.