United States Court of Appeals

For the Eighth Circuit

_____

No. 24-2120
_____

Raymond Thompson

*Plaintiff - Appellant*

v.

Joshua Cockrell; Robert Gerholdt

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 15, 2025
Filed: September 17, 2025
_____

Before ERICKSON, ARNOLD, and STRAS, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Raymond Thompson commenced this 42 U.S.C. § 1983 action against
Manchester (Missouri) Police Officers Joshua Cockrell and Robert Gerholdt
following the theft of his motorcycle from his backyard while the two officers were

present.  The district court[1] granted summary judgment in favor of the officers because they were entitled to qualified immunity, denied Thompson's motion for sanctions for failure to preserve evidence, and denied Thompson's motion for partial summary judgment.  Thompson appeals the adverse summary judgment decision and the denial of his motion for sanctions.  We affirm.

## I.    BACKGROUND

On March 30, 2020, Thompson purchased a 100-year anniversary edition custom 2003 Harley Davidson trike motorcycle ("motorcycle") from Nathan Rench for $5,000.  Thompson paid off the two lienholders and gave Rench the remainder. The parties signed the certificate of title issued on February 21, 2020.  After selling the motorcycle to Thompson, Rench applied for a duplicate title with the Missouri Department of Revenue (the "State"), falsely claiming the title had been lost.  The issuance of a duplicate title resulted in Thompson being unable to register the motorcycle with the State until he could prove he had clear title.

On October 22, 2022, at 11:16 p.m., Officers Cockrell and Gerholdt were dispatched to Thompson's residence on a "keeping the peace" call.  When they arrived at Thompson's residence, they encountered Amara Elmore and her husband Steven Mackenzie.  Elmore informed the officers that she was Rench's daughter, which was later determined to be false.  She told the officers they were helping Rench recover the motorcycle in Thompson's backyard, which, according to Elmore, Thompson had borrowed and never returned.  Elmore told the officers that Rench was unable to assist in the retrieval because he had been in a motorcycle accident and needed a motorized scooter to get around.

Thompson's property consists of a single-family home with a paved driveway that extends into the backyard.  The property is fenced with a gate separating the

---

[1]The Honorable Stephen R. Welby, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

front and back portion of the driveway. Although Thompson insists that the gate was closed when he left his house on October 22, Elmore told the officers that the gate was open when she got there. The motorcycle was parked within the fenced area of Thompson's property, but not in a garage, outbuilding, or otherwise covered or concealed. The district court found that with the gate closed, it would have been difficult to see the motorcycle from the street.

Elmore showed the officers a picture of a title issued on March 9, 2021,[2] listing Rench as the owner. Officer Gerholdt knocked on Thompson's front door several times and rang the doorbell. No one answered. The officers then walked to the backyard where Officer Gerholdt viewed the motorcycle's VIN on the right front fork assembly, verified it matched the picture provided by Elmore, and ran it through a computerized database, which indicated Rench was the registered owner.

Officer Gerholdt then contacted the on-duty supervisor for his opinion on how to handle the situation. He relayed to his supervisor that there was a motorcycle in Thompson's backyard titled in Rench's name, the VIN came back registered to Rench, and the people wanting to take possession of the motorcycle had the key. The supervisor opined that the motorcycle could be released. Mackenzie then started the motorcycle, maneuvered it through the gate and around a vehicle parked in the driveway, and drove away. Elmore got in her vehicle and drove away.

The next day, at 2:18 p.m., the officers were called back to Thompson's home on a report of a stolen motorcycle. Thompson produced evidence memorializing the sale to him, including the certificate of title that had been signed by Rench, a copy of the checks he wrote to buy the motorcycle, a bill of sale from the State, and various legal documents showing he was involved in a lawsuit with Rench over ownership of the motorcycle. Thompson told the officers that he wanted Rench prosecuted for stealing his motorcycle.

---

[2]Unbeknownst to the officers or Elmore, this was a photograph of the duplicate title Rench requested after he sold the motorcycle to Thompson.

-3-

With this information, Officer Gerholdt called Elmore and told her the motorcycle needed to be brought back to Thompson. Several minutes later, Rench called Officer Gerholdt to tell him the motorcycle belonged to him because Thompson did not register it within 30 days of the sale. Officer Gerholdt directed Rench to return the motorcycle or a "wanted" would be issued and the motorcycle would be reported as stolen. Rench told Officer Gerholdt that he was not going to return the motorcycle, and nothing was going to change his mind.

On November 1, 2022, after obtaining information from a neighbor about Rench's whereabouts, law enforcement located Rench at a gas station as he was putting fuel in his John Deere lawn mower. Rench was arrested for stealing a motor vehicle, booked, and released pending warrant applications. Rench declined to provide any information about the motorcycle's whereabouts.

Thompson filed this action on February 6, 2023, alleging law enforcement engaged in an unlawful search and seizure of his property in violation of the Fourth Amendment and the officers violated his Fourteenth Amendment due process rights. Days later, on February 12, 2023, Officer Gerholdt was notified by the Owensville Police Department that Thompson's motorcycle had been located. The motorcycle had been towed after Rench was arrested for driving with a suspended license. Thompson was notified of the motorcycle's location and the process to recover it.

In January 2024, Thompson moved for sanctions for the failure to preserve electronically stored evidence. Officer Gerholdt activated his body camera (which would correspondingly activate his dash camera) while he was at Thompson's residence on October 22, 2022. His body camera was also activated and recording when he returned to Thompson's property the next day. Upon completion of the calls, Officer Gerholdt tagged his body camera footage as "miscellaneous." When his shift was over, Officer Gerholdt placed his body camera into a docking station at the police station, which automatically uploads recordings onto a server. The dash camera footage automatically uploads when a patrol vehicle returns to the station.

While the Manchester Police Department subsequently opened a theft investigation, this occurred after the recordings had been uploaded. When the police chief, who handles preservation requests for the Manchester Police Department, saw the request for preservation of evidence pertained to theft of a motor vehicle—a felony—he assumed the recordings would be maintained for at least three years before they were at risk of being automatically purged. Because Officer Gerholdt tagged his body camera footage as "miscellaneous" due to the civil peacekeeping nature of the initial call, the recordings were purged by the automatic retention settings after 30 days. It was after this lawsuit was filed that the Manchester Police Department discovered the recordings had been automatically purged.

Thompson contends on appeal that the district court erred in granting the officers' summary judgment motion and dismissing his § 1983 claims. Thompson also challenges the court's decision on his motion for sanctions, contending the failure to preserve the recordings was intentional and prejudices his ability to prove punitive damages.

## II.     DISCUSSION

We review a district court's summary judgment decision *de novo*, viewing the record in the light most favorable to Thompson and drawing all reasonable inferences in his favor. De Mian v. City of St. Louis, Mo., 86 F.4th 1179, 1182 (8th Cir. 2023). Whan an officer asserts the defense of qualified immunity, summary judgment is appropriate if: (1) the facts, when viewed in Thompson's favor, fail to establish a constitutional violation, or (2) the law at the time did not clearly establish the constitutional right being asserted. Johnson v. McCarver, 942 F.3d 405, 409 (8th Cir. 2019). Courts have the discretion to decide which prong to consider first. See Pearson v. Callahan, 555 U.S. 223, 224 (2009).

For a right to be clearly established, the law must have been sufficiently clear, at the time of the officer's conduct, to put every reasonable officer on notice that what he was doing violated that right. Carter v. Ludwick, 139 F.4th 982, 989-90

(8th Cir. 2025) (quoting <u>Cent. Specialties, Inc. v. Large</u>, 18 F.4th 843, 852 (8th Cir. 2021)). Thompson bears the burden of showing the law was clearly established. <u>Id.</u> (citation omitted).

### 1. Fourth Amendment Protections for Curtilage

"At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." <u>Kyllo v. United States</u>, 533 U.S. 27, 31 (2001) (cleaned up). Thompson contends the officers violated his Fourth Amendment right to be free from unreasonable searches when they entered the curtilage of his home without a warrant. Curtilage consists of "the area immediately surrounding and associated with the home" and is considered part of the home itself for purposes of the Fourth Amendment. <u>Luer v. Clinton</u>, 987 F.3d 1160, 1165 (8th Cir. 2021) (quoting <u>Florida v. Jardines</u>, 569 U.S. 1, 6 (2013)). The officers do not challenge the district court's finding that the area where the motorcycle was parked falls within the curtilage of Thompson's home.

Exercising our discretion, we first consider whether Thompson has shown the violation of a clearly established right. While the United States Supreme Court held in <u>Caniglia v. Strom</u>, 593 U.S. 194, 196 (2021), that no "standalone" community caretaker doctrine exists to justify a warrantless entry into a home, the Court did not abrogate other longstanding precedents that allow officers to conduct warrantless entries under other circumstances. <u>See</u> <u>Sanders v. United States</u>, 593 U.S. --, 141 S. Ct. 1646, 1647 (2021) (Kavanaugh, J., concurring). More than twenty years ago, this Court held that an officer's warrantless intrusion into the curtilage is not unreasonable if there is a legitimate law enforcement objective and the intrusion upon one's privacy is limited. <u>See</u> <u>United States v. Raines</u>, 243 F.3d 419, 421 (8th Cir. 2001); <u>see also</u> <u>United States v. Weston</u>, 443 F.3d 661, 667 (8th Cir. 2006). Separate from the community caretaker doctrine, under our precedent, the Fourth Amendment is not implicated when law enforcement officers restrict their movements on private property "to those areas generally made accessible to visitors, such as driveways, walkways, or similar passageways." <u>United States v. Wells</u>, 648

F.3d 671, 679 (8th Cir. 2011) (quoting United States v. Reed, 733 F.2d 492, 501 (8th Cir. 1984)).

While Thompson contests whether Officers Cockrell and Gerholdt opened his gate, this disputed issue is immaterial to the claims before us. Thompson did not plead a claim for trespass, nor did he argue trespass as a theory entitling him to relief. To the extent trespass was raised, it was done in passing and not preserved. See Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 989 (8th Cir. 2011). Further, there has been no claim that the gate was locked or forcibly opened. Even accepting Thompson's contention that the officers opened the gate, in Weston, this Court found no Fourth Amendment violation when officers entered an unlocked gate at the end of the driveway and proceeded to the front door of the home, where they discovered incriminating evidence. 443 F.3d at 667. Similarly, in Raines, 243 F.3d at 421, this Court found law enforcement did not violate the Fourth Amendment when, after seeing several cars parked in the driveway but getting no response at the front door, an officer proceeded through an ungated, ten-foot-wide makeshift fence to the backyard in an attempt to serve civil process on a person possibly enjoying the summer evening in the backyard.

Officer Gerholdt testified that when he arrived at Thompson's residence, he encountered people who were upset because their father's motorcycle had not been returned and he "was there to keep the peace and do what [he] could to bring resolution to it." Missouri law allows certain parties to recover property without judicial process if doing so "proceeds without breach of the peace." Mo. Rev. Stat. § 400.9-609. Officer Gerholdt testified that neither Elmore nor Mackenzie said or did anything at the time of the initial encounter that caused him to question their credibility or the documents they showed him.

Prior to entering Thompson's backyard, Officer Gerholdt knocked on the front door of Thompson's house and rang the doorbell. After receiving no response, Officer Gerholdt walked into Thompson's backyard to get a closer look at the VIN for the motorcycle. Officer Gerholdt testified that he believed he was legally

permitted to enter Thompson's backyard in furtherance of his civil "peacekeeping" role. See United States v. Bennett, 972 F.3d 966, 971 (8th Cir. 2020) (reaffirming the legal principle expressed in Weston, 443 F.3d at 667 and also in United States v. Bearden, 780 F.3d 887, 893 (8th Cir. 2015), that "[w]here a legitimate law enforcement objective exists, a warrantless entry into the curtilage is not unreasonable under the Fourth Amendment, provided that the intrusion upon one's privacy is limited.").

Officer Gerholdt did not enter any structure on the property and limited his intrusion on Thompson's property to viewing the VIN on the motorcycle's front fork assembly. Consistent with the procedures set forth in the Manchester Police Department's general order on property interest disputes and vehicle repossessions, Officer Gerholdt confirmed with the State that Rench was the motorcycle's registered owner (as claimed by Elmore) and verified that the picture of the motorcycle and of the title shown to him by Elmore matched the description and VIN of the motorcycle parked in Thompson's backyard.

To warrant the denial of qualified immunity, Thompson must show the law at the time was sufficiently clear to put every reasonable officer on notice that what he was doing violated that right. See Carter, 139 F.4th at 989-90. Notably, Caniglia did not abrogate all warrantless entries onto one's property. Rather, the Court expressly reiterated that "the Fourth Amendment does not prohibit all unwelcome intrusions on private property—only unreasonable ones." 593 U.S. at 198 (cleaned up). Further, Justice Alito noted in his concurring opinion, "it does not follow that all searches and seizures conducted for non-law-enforcement purposes must be analyzed under precisely the same Fourth Amendment rules developed in criminal cases." Id. at 200-01. Contrary to Thompson's arguments, Caniglia did not plainly redefine the limits of all law enforcement conduct when responding to non-criminal matters occurring within a home's curtilage. Given this Court's precedent and accepting the facts in a light most favorable to Thompson, he has not shown the officers' entry into his backyard violated a clearly established right.

2.      Unreasonable Seizure under the Fourth Amendment

Thompson next asserts the officers violated his clearly established Fourth Amendment right to be free from unreasonable seizures when they allowed two civilians to drive away with his motorcycle.  Thompson relies on three cases to support his claim: Soldal v. Cook Cnty., 506 U.S. 56 (1992), Dixon v. Lowery, 302 F.3d 857, 862 (8th Cir. 2002), and Lesher v. Reed, 12 F.3d 148 (8th Cir. 1994).

At no time did the officers take control or custody of Thompson's motorcycle. To have a cognizable § 1983 claim, Thompson must establish the officers acted under color of law.  Meier v. City of St. Louis, Mo., 934 F.3d 824, 829 (8th Cir. 2019).  "An act violating the Constitution is considered to have occurred under color of law if it is 'fairly attributable' to a governmental entity."  Id. (quoting Smith v. Insley's Inc., 499 F.3d 875, 880 (8th Cir. 2007)).  Courts have held that a private party may be characterized as a governmental actor when a private actor is a willful participant in a joint activity with a government entity or its agents, or there is a mutual understanding or a meeting of the minds between the private party and the state actor.  Id. (citations omitted).  In this context, state action exists "if the officer affirmatively intervenes" to aid repossession and it "would not have occurred without the officer's help."  Moore v. Carpenter, 404 F.3d 1043, 1046 (8th Cir. 2005).  An officer's presence at the scene is not enough.  Crawford v. Van Buren Cnty., Ark., 678 F.3d 666, 671 (8th Cir. 2012).

Thompson has presented no evidence showing the officers reached a mutual understanding or engaged in joint activity with Elmore and Mackenzie.  Officer Gerholdt testified that he had no reason to suspect Elmore and Mackenzie were lying to him or that Rench was not the lawful owner of the motorcycle.  Further, unlike in Soldal, 506 U.S. 56, and Dixon, 302 F.3d 857, neither Officer Cockrell nor Officer Gerholdt actively participated in the removal of Thompson's motorcycle.  Their conduct was limited to confirming the motorcycle in Thompson's backyard was the same motorcycle depicted on the picture of the title Elmore showed them and accessing registration information for the motorcycle.  Nor did these officers stand

watch or obstruct Thompson's efforts to retain or reclaim possession of the motorcycle, as the officers did in the cases Thompson cites. Likewise, Lesher, 12 F.3d at 149-50, is distinguishable for a similar reason—in that case the officers actively participated in the seizure of a dog that the plaintiff (a police officer assigned to the canine squad) donated to the police department by driving to the plaintiff's house and threatening to relieve the plaintiff of duty if he did not surrender the dog.

None of the cases cited by Thompson clearly establish that the officers seized Thompson's motorcycle in violation of his Fourth Amendment rights. Because Thompson has not shown the violation of a clearly established right, the officers are entitled to qualified immunity on his unreasonable seizure claim.

### 3. Procedural Due Process

Lastly, Thompson asserts the officers deprived him of his property without due process of law in violation of the Fourteenth Amendment. Thompson's claim is foreclosed by this Court's decision in Moore, 404 F.3d at 1046, which held that "[w]hen a police officer is involved in a private party's repossession of property, there is no state action if the officer merely keeps the peace, but there is state action if the officer affirmatively intervenes to aid the repossessor enough that the repossession would not have occurred without the officer's help." Thompson has not pointed to evidence indicating state action. Here, the officers did nothing to encourage, coerce, or assist Elmore or Mackenzie in the theft of Thompson's motorcycle. The officers are entitled to qualified immunity on Thompson's due process claim, as he cannot show the officers violated a clearly established right. See id. ("States are held responsible for private conduct only when the state has exercised coercion or significantly encouraged the conduct, not when the state has merely acquiesced in a private party's initiatives.").

4.    Motion for Sanctions

On November 14, 2022, Thompson's lawyer emailed a letter to the Manchester Police Department and two city attorneys demanding that body and dash camera footage be preserved in anticipation of possible litigation. The preservation demand was not sent or provided to Officer Gerholdt. The recordings were not preserved, and, according to the chief of police, were deleted pursuant to the automatic retention settings on the evidence management system. The district court declined to impose sanctions under Federal Rule of Evidence 37(e), finding Thompson failed to show prejudice as any evidence regarding the officers' subjective intent would not alter the court's legal analysis or circumstances relevant to qualified immunity.

We review the district court's denial of a motion for sanctions under the deferential abuse of discretion standard, "giving 'substantial deference to the district court's determination.'" Stepnes v. Ritschel, 663 F.3d 952, 965 (8th Cir. 2011) (quoting Gallagher v. Magner, 619 F.3d 823, 844 (8th Cir. 2010)). The police department's failure to take reasonable steps to ensure electronic evidence is preserved, after receiving a clear and timely demand, is something we take seriously. Nonetheless, the district court did not abuse its discretion when it found Thompson cannot show prejudice and declined to impose sanctions.

Thompson asserts the recordings are essential for the purpose of proving the "egregiousness" of the officers' conduct. But resolution of Thompson's claims does not turn on whether the gate to his backyard was open when the officers arrived or whether the officers told Thompson that they could go anywhere on his property because they were police officers. These disputed facts are not material to the analysis of whether the officers violated a clearly established right. See Weston, 443 F.3d at 667 (finding no Fourth Amendment violation when officers entered through a gate at the end of the driveway that "was unlocked and may have been open"); Lykken v. Brady, 622 F.3d 925, 931 (8th Cir. 2010) (noting that when determining

qualified immunity, a court ignores an officer's subjective intent and reviews the conduct for objective reasonableness).

Accepting as true Thompson's rendition of the facts, he cannot show the violation of a clearly established right. Unable to show prejudice, the district court did not abuse its discretion when it denied Thompson's motion for sanctions.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____